**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 5 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SANTIAGO ARAMBURU,

    Plaintiff-Appellant,

v.

THE BOEING COMPANY,
d/b/a BOEING COMMERCIAL
AIRPLANE GROUP, WICHITA
DIVISION, BOEING CORPORATION
and LARRY WHITESELL,

    Defendants-Appellees.

No. 96-3032

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. 93-4064-SAC)
(911 F. Supp. 1377)

---

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, L.L.P., Topeka, Kansas, for Plaintiff-Appellant.

Timothy B. Mustaine, Foulston & Siefkin, L.L.P., Wichita, Kansas, for Defendants-Appellees.

---

Before BALDOCK, KELLY, and LUCERO, Circuit Judges.

---

BALDOCK, Circuit Judge.

    Plaintiff Santiago Aramburu appeals the district court's grant of summary judgment on all claims in favor of Defendants The Boeing Company and Larry Whitesell. We have jurisdiction under 28 U.S.C. § 1291. After reviewing the district court's memorandum opinion, the briefs on

appeal, and the record provided us, we affirm the grant of summary judgment. However, with

respect to several claims we affirm using a different analysis from that applied by the district

court.[1]

---

[1]     Aramburu complains that the district court did not clearly identify the undisputed
facts upon which it relied and did not specify which portions of his proffered evidence it was
rejecting in considering the summary judgment motion. The district court wrote:

> The court has synthesized the uncontroverted facts to only those relevant to its
> decision. Although Aramburu contests several of the defendants' statements of
> uncontroverted facts, many of those objections are not supported by materials
> which the court may consider or are otherwise inappropriate. The court will make
> no attempt to specifically explain its resolution of the parties' numerous disputes
> regarding the uncontroverted facts, but instead has simply set forth the facts
> necessary for its decision.

Aramburu v. The Boeing Co., 911 F. Supp. 1377, 1383 (D. Kan. 1995) (emphasis added). In
evaluating one of Aramburu's claims, the district court also wrote, "Nothing argued by
Aramburu or supported by materials which the court may rely in evaluating a motion for
summary judgment demonstrate the existence of a genuine issue of material fact regarding the
defendants' reasons for his termination." Id. at 1389-90.

In ruling on a summary judgment motion, it is the task of the district court to determine if
the party bearing the burden of proof on an issue at trial has presented sufficient evidence to raise
a genuine issue of material fact as identified by the substantive law to warrant sending the issue
to the factfinder. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-27 (1986); Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 247-52 (1986). While "there is no requirement that the trial judge
make findings of fact," Anderson, 477 U.S. at 250, certain findings are often helpful to a
reviewing court, id. at 250 n.6; e.g., Nebraska v. Wyoming, 507 U.S. 584 (1993) (Supreme Court
sitting in original jurisdiction sets forth limited factual findings in granting summary judgment),
and identification of genuine issues of material fact is helpful to the parties where summary
judgment is denied. See, e.g., Phillips v. Martin Marietta Corp., 400 U.S. 542, 544 (1971) (per
curiam) (identifying disputed issue); Ewers v. Board of County Comm'rs of the County of Curry,
874 F.2d 736 (10th Cir. 1989) (per curiam) (same). It is not for a district court to weigh evidence
nor resolve parties' numerous factual disputes. Anderson, 477 U.S. at 249. Moreover, while a
party does not have to support or oppose summary judgment with evidence in a form that would
be admissible at trial, Celotex, 477 U.S. at 324, some materials are not appropriate for summary
judgment consideration. E.g., Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995)
(holding that Rule 56 precludes the use of inadmissible hearsay in depositions submitted in
support of, or in opposition to, summary judgment). It is clear the district court in this case
disregarded portions of Aramburu's evidence on the grounds that it was inadmissible, but it did

2

Aramburu filed this employment action to recover damages and secure equitable relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the Civil Rights Acts of 1866 and 1991, 42 U.S.C. § 1981; and the Kansas Act Against Discrimination, Kan. Stat. Ann. §§ 44-1000 et seq. Aramburu brought claims for (1) discriminatory discharge on the basis of his Mexican-American ancestry, (2) hostile work environment based on his ancestry and his alleged disability from carpal tunnel syndrome, (3) discriminatory denial of a transfer on the basis of his ancestry and carpal tunnel syndrome, and (4) discriminatory discharge on the basis of his carpal tunnel syndrome.[2] Boeing and Whitesell contend that Aramburu was discharged for failure to maintain proper attendance.

## I. Background Facts

Boeing employed Aramburu in its plant in Wichita, Kansas, from June 8, 1978, until January 29, 1992, as a grade four sheet metal assembler. During the time relevant to this case, Larry Whitesell was Aramburu's supervisor. Aramburu's employment relationship was governed by a collective bargaining agreement between Boeing and the International Association

---

not specify the evidence it disregarded. The better practice would have been to identify that evidence. E.g., Gross v. Burggraf Construction Co., 53 F.3d 1531, 1541 (10th Cir. 1995) (identifying specific statement barred by hearsay rule on summary judgment consideration).

In this opinion, we have re-examined the summary judgment record and discussed the materials to which Aramburu directs us. We specify materials which do not support Aramburu's contentions or which are improper for summary judgment consideration. E.g., Edwards v. Aguillard, 482 U.S. 578, 595-96 (1987) (identifying affidavits which did not generate a genuine fact issue). See generally Bolden v. PRC Inc., 43 F.3d 545, 548 (10th Cir. 1994) (stating appellate court can affirm a summary judgment on alternative grounds as long as the grounds are supported by the record), cert. denied, 116 S. Ct. 92 (1995).

[2] Aramburu abandoned his claim for failure to promote in the district court. See Aramburu, 911 F. Supp. at 1390 n.8.

of Machinists and Aerospace Workers, dated November 22, 1989, and the company policies and procedures promulgated in accordance with that agreement. The collective bargaining agreement regulates the accrual and use of vacation and sick leave. Boeing's attendance policy provides for progressive discipline for employees with attendance problems. Supervisors may deny requests for vacation if they believe that permitting vacation time as requested would seriously interfere with production requirements. Written policy requires employees to request in advance permission to take vacation leave. However, the informal practice of shop supervisors was to allow employees to excuse an absence by taking leave after the fact on a discretionary, case-by-case basis.

On January 29, 1992, Aramburu was discharged ostensibly for excessive absenteeism. From the start of his employment, Aramburu had attendance problems. Eight of ten supervisors gave him written reprimands for poor attendance. In February 1988, Boeing and the International Association of Machinists and Aerospace Workers executed a "last chance" letter of understanding. The letter provided that Aramburu would be immediately discharged without recourse if he incurred another unexcused absence. On April 19, 1988, Boeing discharged Aramburu for poor attendance. Despite the no-recourse nature of the last chance agreement, Aramburu filed a grievance. The grievance was settled, and Boeing reinstated him on the condition that he receive treatment for substance abuse. The settlement between Boeing and the union, on behalf of Aramburu, provided that Aramburu would not again be reinstated to the Boeing payroll in a way allowed under the settlement.

In February 1991, Whitesell issued Aramburu a written reprimand for unacceptable attendance. Whitesell issued him another written reprimand on May 16, 1991. Aramburu signed

4

both reprimands. On July 31, 1991, Whitesell again issued Aramburu another written reprimand for poor attendance. The reprimand cited Aramburu for 3 hours of unexcused absence on June 5, 1.9 hours of unexcused absence on June 7, 8 hours on June 8, and 8 hours on June 16. He refused to sign this reprimand, however, arguing that it was unjustified.

In August 1991, Aramburu submitted to Whitesell a written request for 30 hours of vacation time to cover absences incurred while he was serving a sentence for drunk driving. Although the form was not submitted until after the absences, Whitesell approved the leave request as vacation time.

On January 10, 1992, Whitesell issued a proposed termination of Aramburu for poor attendance. The proposed termination cites unexcused absences for the full work day of January 8, 1992, and for partial days on November 19, December 3, and December 19, 1991. It also refers to his unexcused absences incurred in May and June 1991. The proposed termination also recited Aramburu's historical attendance problems and his discharge in 1988. On January 29, 1992, Boeing discharged Aramburu for failure to maintain proper attendance.

## II. Standard of Review

We review de novo the grant of summary judgment and apply the same legal standards as the district court under Rule 56. Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "We view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury." Williams v. Rice, 983 F.2d. 177, 179 (10th Cir.1993). In other words, the

nonmoving party must "make a showing sufficient to establish an inference of the existence of each element essential to the case." Bolden v. PRC Inc., 43 F.3d 545, 548 (10th Cir. 1994), cert. denied, 116 S.C. 92 (1995). We may affirm the grant of summary judgment for reasons other than those used by the district court as long as they are adequately supported by the record. Id.

### III. Claim for Wrongful Discharge on the Basis of Ancestry

Aramburu contends that he was discharged because of his Mexican-American ancestry, while Boeing and Whitesell contend he was discharged for failing to maintain satisfactory attendance. To establish a prima facie case on a claim of discriminatory discharge, where the plaintiff was discharged for the purported violation of a work rule, the plaintiff must show that (1) he is a member of a protected class, (2) that he was discharged for violating a work rule, and (3) that similarly situated non-minority employees were treated differently. EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992).

If the plaintiff establishes a prima facie case, the defendant must articulate, and support with some evidence, a legitimate, nondiscriminatory reason for the discharge. Flasher, 986 F.2d at 1316; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). If the defendant meets this burden, the plaintiff must then present evidence raising a genuine issue that his termination was the result of his ancestry or that the reason offered by Boeing and Whitesell was a mere pretext. See Corneveaux v. Cuna Mutual Ins. Group, 76 F.2d 1498, 1503 (10th Cir. 1996); Flasher, 986 F.2d at 1316. At the summary judgment stage, if the plaintiff can show a prima facie case of discrimination and present evidence that the employer's proffered

6

nondiscriminatory reason is a mere pretext, the case should go to the factfinder. Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995).[3]

The district court ruled that Aramburu failed to present evidence demonstrating the existence of a genuine issue of material fact regarding the reason proffered by Boeing and Whitesell for his discharge, excessive absenteeism, or that Aramburu was treated differently in regards to attendance because of his ancestry. The district court also ruled that Aramburu failed to show that he was similarly situated to fellow employees whom he contends were differently treated.

### A. Prima Facie Case of Discrimination

In this case, we assume without deciding that Aramburu has met the elements of his prima facie case under Flasher. E.g., Morgan v. Hilti, Inc., 108 F.3d 1319, 1997 WL 118531, *4 (10th Cir. 1997) (assuming without deciding that ADA plaintiff had met prima facie case requirements); Jones, 54 F.3d at 630 (same).

### B. Legitimate, Nondiscriminatory Reason

The record contains evidence that Aramburu was discharged for failing to maintain satisfactory attendance. This reason is legitimate and nondiscriminatory. See Morgan, 1997 WL 118531, *4. As Boeing and Whitesell have met their burden to articulate and produce some evidence that Aramburu was discharged for a facially legitimate and nondiscriminatory reason,

---

[3] The same standards and burdens apply in establishing a claim based on ancestry and disability under the Kansas Act Against Discrimination. See Woods v. Midwest Conveyor Co., Inc., 648 P.2d 234, 238-39 (Kan. 1982). They also apply to claims brought under 42 U.S.C. § 1981. Patterson v. McLean Credit Union, 491 U.S. 164, 186-87 (1989); Durham v. Xerox Corp., 18 F.3d 836, 839 (10th Cir.), cert. denied, 115 S. Ct. 80 (1994).

"the presumption of discrimination established by the prima facie showing simply drops out of the picture." See Jones, 54 F.3d at 630 (internal quotation omitted).

## C. Pretext

We turn to the dispositive inquiry on this claim, the requirement that Aramburu present evidence raising a genuine issue that his termination was the result of his ancestry or that the reason offered by Boeing and Whitesell was a mere pretext. See Jones, 54 F.3d at 630; Flasher, 986 F.2d at 1316. In this connection, Aramburu contends that similarly situated non-minority employees were not discharged for violating rules of comparable seriousness. He also contends that the evidence surrounding his discharge must be viewed in his favor under the spoilation doctrine. Lastly, he contends that he has presented direct evidence that Whitesell harbored a discriminatory animus against Mexican-Americans. We reject each contention in turn.

### 1. Differential Treatment of Similarly Situated Non-Minority Employees

To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness. Elmore v. Capstan, Inc., 58 F.3d 525, 529-30 (10th Cir. 1995). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Wilson v. Utica Park Clinic, Inc., No. 95-5060, 76 F.3d 394, 1996 WL 50462 (10th Cir. Feb. 7, 1996) (unpublished) (citing Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986), aff'd, 814 F.2d 653 (2d Cir. 1987)). A court should also compare the relevant employment circumstances, such

as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated.  See David v. City and County of Denver, 101 F.3d 1344, 1359-60 (10th Cir. 1996) (discussing circumstances to be compared); Flasher, 986 F.2d at 1320 (same); see also Furr v. Seagate Technology, Inc., 82 F.3d 980, 986 (10th Cir. 1996) (rejecting plaintiff's evidence of differential treatment because the other employees were not similarly situated), cert. denied sub nom. Doan v. Seagate Technology, Inc., 117 S. Ct. 684 (1997).

At Boeing, employees' sick leave and vacation leave allowances are based on seniority. To monitor attendance, the company uses a progressive point system under which an employee is disciplined if he receives two infractions in an eight-week period.  An employee commits a whole infraction by missing more than four hours in one day without excuse, and a one-half infraction by missing four or less hours in one day without excuse.  Supervisors maintain the attendance records and have the discretion to permit an employee to take vacation leave without advance approval, which provides an employee an excuse for what would otherwise be an unexcused absence.  Also, supervisors may issue employees a corrective action memorandum for attendance infractions.

Aramburu contends that Whitesell discriminated against him by refusing to use his discretion to allow him to use leave without advance notice, resulting in unexcused absences for Aramburu.  The unexcused absences, in turn, served as the basis for Whitesell's initiation of disciplinary proceedings against Aramburu and resulted in his discharge.

Aramburu points to the July 1991 corrective action memorandum issued to him, which he contends was based in part on his absence from work on July 16, 1991.  On July 16, Aramburu

9

missed work because of mechanical trouble with his truck. Whitesell did not allow Aramburu to take vacation time for the missed day. To show discrimination, Aramburu contends in his appellate brief that, "Both [P]laintiff and non-minority employee [David] Cliver testified that Whitesell did not require preapproval for white male workers." However, Aramburu does not support this contention with appropriate evidence.

For example, Aramburu refers to a page of his summary judgment response, where, in turn, he refers to a page of his own deposition and a page from the deposition of Cliver. However, the portion of Aramburu's own deposition testimony does not sufficiently support his contention of discriminatory treatment. In response to a question about whether an employee was required to obtain preapproval to take vacation leave, Aramburu testifies:

> A. That's the way I was told, it [the Boeing handbook] says that you're supposed to give advance notice to have your vacation, but it doesn't work that way in the shop.
>
> Q. How does it work in the shop?
>
> A. In that shop if you were absent, if I [came] in, wanted vacation, I couldn't have it because I didn't give advance notice. If somebody else [came] in, they got paid, they got to take their vacation when they asked for it.
>
> Q. Who were they?
>
> A. Oh, other people in the shop. I mean, it just--it depends--at that time it depended on Larry Whitesell's--it was whether he wanted to give it to you or not. It was up to his sole discretion . . . .
>
> Q. Can you identify for me any person in the shop who got vacation simply when they asked for it?
>
> A. Gary Owens, Jeff Hare, Bruce [Wasstentot and] Jim Nunn. I mean, [they] are just a few [people whom] I know were gone without advance [notice or approval] and [who came] in and asked for vacation and got it.

10

Q. How do you know they were gone without advance notice?

A. Shop talk.

This testimony does not support the inference that Whitesell discriminated against Aramburu on the basis of his ancestry. The testimony does not indicate the ancestries of Owens, Hare, Wasstentot, or Nunn. It does not indicate that the circumstances of their receipt of vacation approval were similar to Aramburu's, who sought leave on July 16, the day after a two-week vacation. See Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1175 (10th Cir. 1996) (rejecting plaintiff's evidence that she was required to dress more formally than her male counterparts because she failed to show they were similarly situated in terms of job functions); Wilson, 1196 WL 50462 at *2 (rejecting differential treatment evidence of a plaintiff discharged for repeated absences where the plaintiff failed to show that her fellow employees had comparable attendance records). The general rule that we draw inferences in favor of the party opposing summary judgment does not permit us to presume in this case that Owens, Hare, Wasstentot, and Nunn are non-minority employees who were similarly situated to Aramburu. See Lujan v. National Wildlife Federation, 497 U.S. 871, 887-89 (1990) (explaining that even on summary judgment specific facts necessary to plaintiffs' standing could not be presumed from general language of affidavit which failed to specify which portions of land out of a large tract plaintiffs actually used where use of only certain tracts afforded standing). Aramburu's testimony also shows that he had no firsthand knowledge that Owens, Hare, Wasstentot, and Nunn did not have advance approval, but, rather, that he based that portion of his testimony on "shop talk" or hearsay. See Fed. R. Evid. 602 (stating a witness must have personal knowledge of a matter in order to testify about the matter); Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555

(10th Cir. 1995) (holding that Rule 56 precludes the use of inadmissible hearsay in depositions submitted in support of, or in opposition to, summary judgment).

Likewise, the portion of Cliver's deposition referenced by Aramburu does not support Aramburu's contention of discrimination in the granting of leave. When questioned whether he saw Whitesell apply vacation and sick leave in a discriminatory way, Cliver answered:

> I saw certain people that got time off and I saw certain people that didn't get time off but I couldn't verify that one way or another because that's all done on paperwork and all's I know is just hearsay.

Again, this testimony does not indicate the ancestries of employees who were granted leave without advance approval or show the circumstances surrounding their receipt of approval. See Durham, 18 F.3d at 840 (rejecting plaintiff's contention that she was more qualified than non-minority employees because she failed to present evidence on the experience of purported comparables); Armesto v. Federal Express Corp., No. 93-1405, 36 F.3d 1105, 1994 WL 470184 (10th Cir. Aug. 31, 1994) (unpublished) (holding plaintiff's proposed comparables were not similarly situated because none had as serious a record of work deficiencies as the plaintiff).

As another example, Aramburu contends that Whitesell permitted other employees to clock out early one day by taking vacation leave, but that he counted Aramburu's hours missed when he left early on the same day as unexcused. Aramburu presents evidence that Whitesell allowed other employees to clock out early on November 5, 1991, when apparently the work in the shop was completed ahead of schedule. Aramburu also presents a memorandum from R.W. Schleiger, a personnel manager, to Whitesell, dated December 2, 1991, in which Schleiger recommends that Whitesell clock Aramburu's absence on November 5 to sick leave. On the inference favorable to Aramburu, Whitesell had apparently recorded that Aramburu had taken

12

unexcused time off on November 5. Aramburu contends that this evidence shows that Whitesell discriminated against him.

However, this evidence has several problems. It does not reflect the ancestries of the other employees who were permitted to take vacation leave and does not allow for a comparison which supports an inference that Whitesell discriminated against him on account of his ancestry. Singular, unfavorable treatment of Aramburu might normally support an inference of some animus by Whitesell against him in the absence of a legitimate explanation. However, Aramburu's own evidence shows that other minorities were employed in the shop on November 5, and unfavorable treatment of Aramburu does not support an inference of improper animus when other minorities are accorded the same treatment as the non-minority employees.[4] Cf. Furr, 82 F.3d at 987 (stating when making comparisons with other employees a plaintiff must account for nondiscriminatory reasons for differential treatment). An animus not related to Aramburu's ancestry, such as a personality conflict with Whitesell, is not evidence of improper discrimination. See Sanchez v. Philip Morris, Inc., 992 F.2d 244, 247-48 (10th Cir. 1993) (stating that Title VII does not protect against adverse employment decisions made on such

_____

[4] An employer's similar or favorable treatment of protected employees does not support an inference of discriminatory animus. See, e.g., Fowler v. Blue Bell, Inc., 737 F.2d 1007, 1013 n.4 (11th Cir. 1984) (stating statistical evidence showing that Blue Bell employed a greater percentage of African-Americans than were employed in the workforce of the country as a whole buttressed the finding that the company did not discriminate in hiring); Hernandez v. Phelps Dodge Refining Corp., 572 F.2d 1132 (5th Cir. 1978) (per curiam) (stating statistical evidence that persons with Spanish surnames were hired, trained, and promoted in high percentages showed that an aptitude test did not have a discriminatory impact). At the least, an employer's similar or favorable treatment of protected employees emphasizes the importance of the requirement that the plaintiff provide adequate evidence that the plaintiff was similarly situated to the non-minority employees with whom he seeks comparison, and that his comparative evidence allow for the reasonable exclusion of nondiscriminatory reasons for different treatment.

13

factors as favoritism or mistake); <u>see also</u> <u>Parker v. Housing Authority of Kansas City, Kansas</u>, No. 92-3136, 996 F.2d 311, 1993 WL 207441, *4 (10th Cir. June 9, 1993) (unpublished) (stating personality conflicts not covered).

Moreover, a reading of Schleiger's deposition reveals that he learned that Whitesell had clocked a portion of Aramburu's November 5 absence to his vacation leave, as Aramburu contends he did for the other employees, until his vacation leave was exhausted. Apparently, Whitesell recorded Aramburu's remaining time off on November 5 as an unexcused absence. Schleiger did later recommend that Whitesell clock that remaining time to Aramburu's sick leave. However, Aramburu did not show that Whitesell initially discriminated against him in accounting for his time off on November 5 because he did not show that he was similarly situated to the employees who were permitted to leave early by taking vacation time, because his vacation time was exhausted. Further, Schleiger testified that Aramburu's absence on November 5 was not considered in the decision to discharge him.

In summary, we reject Aramburu's first contention that he has presented evidence indicating that he was treated differently than similarly situated non-minority employees who violated work rules of comparable seriousness. He repeatedly argues that his evidence shows that non-minority employees were granted excused leave under circumstances similar to instances when Whitesell refused his leave requests. However, that evidence does not even minimally show that similarly situated non-minority employees were treated differently. Thus, the evidence does not allow for a comparison which eliminates nondiscriminatory reasons for differential treatment.

2. Spoilation of Evidence

14

As his second contention on pretext, Aramburu argues that he is entitled to a favorable inference under the spoilation doctrine. He points out that Whitesell initiated the disciplinary process against him and contends that Whitesell denied him permission to use vacation or sick leave time out of discrimination as well as incorrectly tabulated his unexcused absences, which resulted in his discipline and discharge.

Most importantly in this regard, Aramburu presents the deposition testimony of Whitesell, which indicates that he lost portions of Aramburu's attendance records.[5] Aramburu contends that Whitesell spoiled the evidence and, therefore, that "the facts must be reviewed in the light most favorable to the plaintiff." As legal authority for his spoilation argument, Aramburu refers only to one case, Foster v. Lawrence Memorial Hosp., 809 F. Supp. 831 (D. Kan. 1992). However, the district court in Foster addressed the question of whether Kansas would recognize a common law tort action for intentional spoilation of evidence. Aramburu is not bringing a claim for intentional spoilation and does not explain the relevance of Foster.

Although the parties have not directed us to precedent from this circuit on the evidentiary doctrine of spoilation and we cannot locate any such precedent, the general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction. See Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th Cir. 1985); see generally Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107 (S.D. Fla. 1987). The adverse inference must be predicated on the bad faith of the party destroying the records. See Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975); see also Anderson v. Cryovac, Inc.,

---

[5] The district court did not address the spoilation issue.

15

862 F.2d 910, 926 (1st Cir. 1988). Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case. Vick, 514 F.2d at 737.

Aramburu principally relies on the following portion of Whitesell's deposition:

Q: Can you show me [Aramburu's] record for '91?

A: No, I cannot.

Q: Where is that?

A: I took it out. I took it out of these. And these were in two or three different spots in my file. And I took them--I took his out and I have misplaced it. I put it up for the sole reason of keeping it, and I misplaced it.

While this testimony shows that Whitesell lost certain of Aramburu's attendance records for 1991, it does not show that he did so in bad faith. Whitesell lost a calendar page from Aramburu's 1991 attendance record. However, Boeing presented other attendance records for Aramburu, such as the calendar pages from his 1990 and 1992 attendance records and a computer record entitled "Absence Inquiry by Individual" which records an employee's absences and whether they are charged to sick leave, vacation leave, excused leave without pay, or unexcused leave. This computer record reflects Aramburu's absences for 1991. Aramburu does not point to evidence showing that Whitesell lost his records in bad faith, and any inference of bad faith is undermined by the other attendance records produced by Boeing. Aramburu, thus, has not shown himself entitled to an adverse inference under the spoilation doctrine.

16

### 3. Direct Evidence of Discriminatory Animus

As his third contention on pretext, Aramburu argues that he has presented direct evidence that Whitesell harbored a discriminatory animus against Mexican-Americans. See Jones, 54 F.3d at 630 (stating that a plaintiff may establish a claim of discrimination with direct evidence); Wagher v. Guy's Foods, Inc., 885 P.2d 1197, 1213-14 (Kan. 1994) (defining direct evidence as "evidence which relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee"). Aramburu contends that three other Mexican-Americans who worked under Whitesell's supervision complained that he discriminated against them. Aramburu first refers to the personnel file of Gabe Anaya. However, the file is 43 pages in length, and Aramburu does not refer to a specific portion of the file. See Gross v. Burggraf Construction Co., 53 F.3d 1531, 1546 (10th Cir. 1995) ("Without a specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." (internal quotations omitted)). Nevertheless, after our review of the file, we can find only one unsigned, handwritten document[6] which on its face appears to be a record of a complaint by Anaya that Whitesell "harassed" and belittled Anaya, "with such comments as 'Why do I have to do your job?'" However, the document does not indicate that Anaya complained that Whitesell harassed or belittled him on account of his ancestry. See Lowe, 87 F.3d at 1176 (stating that plaintiff's evidence of supervisor's use of racial epithets did not support her claim of sex

---

[6]    In noting that the document is not identified or verified, Boeing and Whitesell seem to lodge an authentication objection to the document. In light of our determination that the document does not support an inference of discriminatory animus by Whitesell, we do not need to consider the authentication issue.

discrimination); Parker, 1993 WL 207441 at *4 (rejecting as evidence of discriminatory motive defendant officials' negative remarks and actions because nothing showed that the remarks and actions were motivated by racial animus). In fact, the document reflects that Anaya complained that Whitesell was abusive towards all those under his supervision. According to the document, Anaya complained that Whitesell "pushes all his people" and "makes comments [to] the entire crew." These complaints do not support the inference that Whitesell singled out anyone for abuse on the basis of ancestry. See Lowe, 87 F.3d at 1176 (stating plaintiff's evidence that the workplace was a "highly volatile and frequently unpleasant place to work for both men and women" did not support a claim of sex discrimination).

In this connection Aramburu also refers to a portion of the deposition testimony of Robert Wood, apparently a personnel employee, who discusses the same document from the Anaya file. Again, like the document itself, Wood's testimony does not reflect that Whitesell's purported mistreatment of Anaya was the product of animus against his ancestry.

Lastly in this regard, Aramburu refers to the personnel file of Russell Rosales. Sixty-one pages of this file are included in the record, but Aramburu refers to a page 66 in his summary judgment response. We cannot locate a page 66. See King v. Unocal Corp., 58 F.3d 586, 587 (10th Cir. 1995) (stating that the appellant must provide an adequate record for review of all issues raised on appeal). Our review fails to reveal a record of a complaint of discrimination by Whitesell. In short, the Anaya file, Wood's deposition, and the Rosales file do not constitute evidence, either direct or circumstantial, of a discriminatory animus by Whitesell.[7]

_____

[7] Even if the Anaya file, Wood's deposition, and the Rosales file provided evidence that three other employees believed Whitesell had discriminated against them, subjective belief of discrimination is not sufficient to preclude summary judgment. See Panis v. Mission Hills

Next, Aramburu contends that David Cliver, who worked under Whitesell for a short time, "testified that Whitesell applied vacation and sick leave in a discriminatory way, and described Whitesell as a bigot." He refers to the same page of Cliver's deposition as discussed earlier, where Cliver testified, "I saw certain people that got time off and I saw certain people that didn't get time off but I couldn't verify that one way or another because that's all done on paperwork and all's I know is just hearsay." Again, this testimony does not indicate the ancestries of employees who were granted leave without advance approval or show the circumstances surrounding their receipt of approval. Aramburu also refers to this exchange:

Q. Do you think Mr. Whitesell was a bigot?

A. Personally?

Q. Yes.

A. Yes.

This testimony amounts to no more than Cliver's opinion and is inadequate summary judgment evidence of discriminatory animus. See Panis, 60 F.3d at 1491; Hanson, 1994 WL 55136 at *4; Little, 924 F.2d at 96.

In summary, Aramburu offers no evidence, either direct or circumstantial, that Whitesell harbored a discriminatory animus against Mexican-Americans. His evidence either shows no

Bank, N.A., 60 F.3d 1486, 1491 (10th Cir. 1995) (stating an employee's mere conjecture that her employer's explanation for an adverse employment action is a pretext for intentional discrimination is insufficient to preclude summary judgment), cert. denied, 116 S. Ct. 1045 (1996); Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) (same); Hanson v. City of Oklahoma City, No. 94-6089, 37 F.3d 1509, 1994 WL 551336 (10th Cir. Oct. 11, 1994) (unpublished) (holding plaintiff's subjective belief of discrimination was insufficient to preclude summary judgment); Little v. Republic Refining Co., 924 F.2d 93, 96 (5th Cir. 1991) (stating that co-workers' subjective belief of discrimination was subject to the same criticism as the plaintiff's belief).

more than that Whitesell treated all of his employees harshly, or it amounts only to the subjective belief of Aramburu or his co-workers that Whitesell practiced discrimination.

### 4. Summary

In summary, Aramburu fails to counter the evidence presented by Boeing and Whitesell that he was discharged for failure to maintain satisfactory attendance. Aramburu fails to present evidence that similarly situated non-minority employees were treated differently for violating work rules of comparable seriousness. He is not entitled to a favorable inference under the spoilation doctrine, and he does not present direct, or circumstantial, evidence that Whitesell harbored a discriminatory animus against Mexican-Americans. Although our analysis differs from the memorandum opinion of the district court, we affirm its judgment on the wrongful discharge claim. See Bolden, 43 F.3d at 548 (stating that a summary judgment can be affirmed upon different grounds as long as they are supported by the record).

### IV. Claim for Hostile Work Environment

Aramburu contends that Whitesell subjected him to a hostile work environment on account of his ancestry and disability.[8] The district court ruled that Aramburu failed to exhaust

---

[8] The district court's memorandum opinion addresses Aramburu's hostile environment claim as if he had brought it under Title VII, § 1981, and the Kansas Act Against Discrimination, on the bases of both his ancestry and disability. The parties did not address whether the Kansas Act Against Discrimination provides for a hostile environment claim on the basis of disability. However, we assume without deciding that it does in this case. A similar claim has enjoyed some recognition under the Americans With Disabilities Act. See, e.g., McClain v. Southwest Steel Co., Inc., 940 F. Supp. 295, 301-02 (N.D. Okla. 1996); Soileau v. Guilford of Maine, Inc., 928 F. Supp. 37, 46 (D. Me 1996), aff'd, _ F.3d_, 1997 WL 17956 (1st Cir. Jan. 23, 1997); Fritz v. Mascotech Automotive Sys. Group, Inc., 914 F. Supp. 1481, 1492 (E.D. Mich. 1996); Haysman v. Food Lion, Inc., 893 F. Supp. 1092, 1106 (S.D. Ga. 1995).

his administrative remedies on this claim and failed to present evidence from which a reasonable jury could find that he was subjected to an objectively hostile work environment.

A plaintiff must exhaust his administrative remedies before bringing suit under Title VII and the Kansas Act Against Discrimination. Jones v. Runyon, 91 F.3d 1398, 1399-1401 (10th Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3354 (US Oct. 29, 1996) (No. 96-684); Van Scoyk v. St. Mary's Assumption Parochial Sch., 580 P.2d 1315, 1317-18 (Kan. 1978). The suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge. Brown v. Hartshorne Public School Dist. #1, 864 F.2d 680, 682 (10th Cir. 1988). The administrative charged filed by Aramburu alleged wrongful discharge only. Aramburu argues that his hostile environment claim is reasonably related to his wrongful discharge claim simply because all of Whitesell's conduct is related. However, underlying Aramburu's wrongful discharge claim are his allegations that Whitesell manipulated his attendance records and refused to grant him leave to excuse some of his absences out of discrimination. In contrast, his hostile environment claim is based on his allegations that Whitesell harassed him and required him to work beyond his medical restrictions. The wrongful discharge allegations are not reasonably related to the hostile environment allegations. See Archuleta v. Colorado Dept. of Institutions, 936 F.2d 483, 488 (10th Cir. 1991) (holding that plaintiff's claims of sexual harassment and pregnancy discrimination were not reasonably related to her discharge claim); Hornsby v. Conoco, Inc., 777 F.2d 243, 247 (5th Cir. 1985) (holding that plaintiff's claim of sexual harassment was not reasonably related to her claims of sex and age discrimination). Thus, we affirm the district court's ruling that Aramburu failed to exhaust his administrative remedies on

21

his hostile environment claims brought under Title VII and the Kansas Act Against Discrimination.

On his remaining claim for hostile work environment under §1981,[9] Aramburu must present evidence of an objectively hostile work environment. See Bolden, 43 F.3d at 550-51 (Title VII); Durham, 18 F.3d at 838-39 (stating standards and burdens under § 1981 are the same as those under Title VII). To survive summary judgment, the plaintiff must show that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was based on the victim's ancestry or disability. Id. at 551 (internal citations omitted). General harassment if not based on ancestry or disability is not actionable. Id. The plaintiff must demonstrate more than a few isolated incidents of prohibited conduct, such as a steady barrage of opprobrious comments based on ancestry or disability. Id.; Lowe, 87 F.3d at 1175.

---

[9] Aramburu was not required to exhaust any administrative remedies before bringing his claim under § 1981. See Meade v. Merchants Fast Motorline, Inc., 820 F.2d 1124, 1126 (10th Cir. 1987) (per curiam); Taylor v. Safeway Stores, Inc., 524 F.2d 263, 273 (10th Cir. 1975). Before the addition of subsection (b) to § 1981, a plaintiff could not bring a hostile environment claim under the section. See Hill v. Goodyear Tire & Rubber, Inc., 918 F.2d 877, 879-80 (10th Cir. 1990). However, we assume without deciding that the addition of subsection (b) permits a plaintiff to bring a hostile environment claim for conduct occurring after November 21, 1991, the effective date of § 1981's amendment. See Williams v. Carrier Corp., 889 F. Supp. 1528, 1530 (M.D. Ga. 1995) (ruling that the 1991 amendment allows hostile environment claims for conduct occurring after November 21, 1991); cf. Winbush v. State of Iowa, 66 F.3d 1471, 1476-77 & n.7 (8th Cir. 1995) (holding that a plaintiff could not bring a hostile environment claim under §1981 for conduct occurring before 1991 because the amendment is not retroactive). See also Rivers v. Roadway Express, Inc., 114 S. Ct. 1510 (1994) (holding that §1981's amendment is not retroactive). We also assume that Aramburu has stated a claim for hostile environment based on conduct occurring after November 21, 1991, even though he does not tie his hostile environment allegations to a specific date.

Upon review of this record, we agree with the district court that Aramburu did not present sufficient evidence from which a reasonable jury could find that he was subjected to an objectively hostile work environment. He argues that his evidence shows that Whitesell mistreated other Mexican-American employees. Although he makes no specific reference to the evidentiary record to support this argument, presumably he refers to the personnel files of Anaya and Rosales and the Wood deposition, as well as the Cliver deposition. As discussed at Part III. C., infra, this evidence does not support the inference that Whitesell discriminated against Mexican-Americans.

Also, Aramburu contends that his evidence shows that Boeing did not furnish him with an ergonomic review regarding his carpal tunnel syndrome and that Whitesell required him to work beyond his medical restrictions. In support of the first contention, Aramburu refers to portions of the depositions of Robert Wood, apparently a personnel employee, and Richard Buchanan, apparently a personnel manager, who testified that they did not know whether Aramburu was given an ergonomic review. In support of his second contention, he refers to his own deposition in which he testifies to one instance where Whitesell required him to drive rivets in contravention of his medical restrictions. This evidence does not demonstrate the kind of pervasive harassment necessary to give rise to an objectively hostile environment.

More importantly, contentions that Boeing did not furnish Aramburu with an ergonomic review, to the extent this failure bears on Boeing's duty of reasonable accommodation, and that Whitesell required him to work beyond his medical restrictions may state independent violations of the Kansas Act Against Discrimination for disability discrimination. However, they do not state a claim under § 1981 because the section is concerned with discrimination based on race

23

and not on disability.[10]  See Rivers, 114 S. Ct. at 1514 n.2 (stating § 1981 addresses racial discrimination); General Building Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375 (1982) (discussing § 1981 in terms of racial discrimination); Duane v. Government Employees Ins. Co., 784 F. Supp. 1209, 1216 (D. Md. 1992) (noting § 1981 does not address handicap discrimination), aff'd, 37 F.3d 1036 (4th Cir. 1994), cert. dismissed, 115 S. Ct. 2272 (1995); Duncan v. AT & T Communications, Inc., 668 F. Supp. 232, 235 (S.D.N.Y. 1987) (ruling that § 1981 does not address disability discrimination).  Thus, these allegations, even if true, do not state a hostile environment claim under § 1981.  See Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 538 (10th Cir. 1994) (stating that no matter how unpleasant the nature of a working environment must be due to the plaintiff's protected characteristic to support a hostile environment claim).

In summary, we agree with the district court that Aramburu failed to exhaust his administrative remedies under Title VII and the Kansas Act Against Discrimination on his hostile environment claim.  Likewise, he failed to present evidence that he was subjected to an objectively hostile work environment on account of his ancestry within the meaning of cases such as Bolden.  See Bolden, 43 F.3d at 550-51.  Therefore, we affirm the district court's grant of summary judgment on this claim.

V.  Claim for Denial of Transfer

---

[10]    We consider Aramburu's claim of discrimination based on his Mexican-American ancestry in this case to fall within § 1981's protection against racial discrimination.  Section 1981 does not protect individuals from discrimination based on national origin.  Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987).

Aramburu brings a claim for discriminatory denial of transfer. He contends that Whitesell refused to permit him to transfer to the supervision of David Keeling in the fall of 1991. The district court ruled that Aramburu failed to exhaust his administrative remedies on this claim and that he failed to present evidence from which a reasonable jury could find that he was denied a transfer on an impermissible basis.

A plaintiff must exhaust his administrative remedies before bringing suit under Title VII or the Kansas Act Against Discrimination. Jones, 91 F.3d at 1399-1401; Van Scoyk, 580 P.2d at 1317-18. The suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge. Brown, 864 F.2d at 682. The administrative charged filed by Aramburu included allegations regarding his wrongful discharge claim only. Aramburu argues that his denial of transfer claim is reasonably related to his discharge claim because it was part of Whitesell's overall treatment of him. He also argues that Whitesell refused to permit him to transfer so that he could continue to discriminate against him.

Aramburu has not shown that the denial of transfer claim is reasonably related to his discharge claim. The allegations surrounding the denial of a transfer in the fall of 1991 have no relation to the allegations that Whitesell refused to allow Aramburu to take leave out of discrimination and manipulated his attendance record in order to discipline and discharge him. Aramburu has not shown that an administrative investigation of the discharge claim would reasonably include an investigation into the alleged denial of a transfer. See Weiss v. Coca-Cola Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (holding that plaintiff's denial of transfer claim was not reasonably related to her claims of discriminatory training, discharge, and

25

harassment). Thus, we affirm the district court's ruling that Aramburu failed to exhaust his administrative remedies on his denial of transfer claims brought under Title VII and the Kansas Act Against Discrimination.

Additionally with regard to his claim under § 1981, Aramburu fails to present evidence indicating that he was denied a transfer on the basis of his ancestry. He merely presents evidence that he verbally requested a transfer to another supervisor Brian Keeling in October or November 1991, that Keeling would have accepted the transfer provided it received Whitesell's approval, and that Whitesell denied the transfer. The only evidence Aramburu presents on the reason for the denial is Whitesell's own testimony that he considered Aramburu to be a competent rivet driver and that he generally believed he received lesser qualified individuals when he allowed transfers. No evidence indicates that Whitesell denied the transfer on account of Aramburu's ancestry.

VI. Claim for Wrongful Discharge on the Basis of Disability

Aramburu claims that Boeing and Whitesell discharged him because of his alleged disability in violation of the Kansas Act Against Discrimination. Aramburu asserts that he was diagnosed with carpal tunnel syndrome in connection with his work at Boeing and that he suffered from this condition at the time of his discharge.[11] Boeing and Whitesell again contend that he was discharged because of excessive absenteeism. The district court ruled that Aramburu failed to present evidence that he was treated differently in regard to his attendance because of his disability.

---

[11]    We assume without deciding that Aramburu was disabled by his carpal tunnel syndrome. See Hudson v. MCI Telecommunications Corp., 87 F.3d 1167, 1168-69 (10th Cir. 1996) (discussing issue plaintiff's disability caused by carpal tunnel syndrome).

26

Aramburu must make a showing on his claim for discharge on account of his disability analogous to the one he was required to make on his claim for discharge on account of his ancestry. See Woods, 648 P.2d at 238-39. Upon a review of the record, we find that Aramburu failed to present evidence from which a reasonable jury could find that the proffered reason for his discharge, excessive absenteeism, was a pretext or that he was actually discharged because of his disability.

Virtually all of Aramburu's argument and evidence relevant to his disability claim concern his allegations that Whitesell required him to work beyond his medical restrictions and that Boeing did not provide him with an ergonomic review regarding his carpal tunnel syndrome. He testified in his deposition that Whitesell required him to drive rivets in contravention of his medical restrictions on one occasion. He also presents the deposition testimony of Richard Buchanan, apparently a personnel manager, who testifies that he did not know whether Aramburu received an ergonomic review concerning his medical limitations or whether an assessment was performed to see whether Aramburu could be placed in a new position to accommodate his medical restrictions.[12] Robert Wood, apparently a personnel employee, likewise testified that he did not know whether Aramburu had been given an ergonomic review. While failing to provide a reasonable accommodation and requiring an employee to work beyond his medical restrictions might state claims for violation of the Kansas Act Against Discrimination under the appropriate circumstances, Aramburu's administrative charge filed with the Kansas

---

[12]     Under the analogous Americans With Disabilities Act, it is the plaintiff's burden, however, to make a prima facie showing that accommodation is possible. See MacDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996); White v. York Int'l Corp., 45 F.3d 357, 361 (10th Cir. 1995).

27

Human Rights Commission charges only that he was discharged on account of his disability. Claims based on a failure to accommodate and a requirement that an employee exceed his medical limitations are not reasonably related to a claim of wrongful discharge. Thus, Aramburu has not shown that he exhausted his administrative remedies in connection with these allegations. See Wagher, 885 P.2d at 1206 (discussing exhaustion of administrative remedies under Kansas Act Against Discrimination); Mattox v. Department of Transportation, 747 P.2d 174, 174-76 (Kan. Ct. App. 1987) (same). Moreover, Aramburu's allegations and evidence concerning a failure to accommodate and a requirement that he work beyond his medical restrictions do not tend to show that he was discharged on account of his disability. In fact, Aramburu repeatedly argues, and presents some evidence, that Whitesell considered him able to perform his duties. Moreover, as the district court noted, no evidence indicates that Aramburu was treated differently with regard to his attendance on account of his carpal tunnel syndrome.

In summary, Aramburu failed to present evidence from which a reasonable jury could find that he was discharged on account of his carpal tunnel syndrome. His allegations that Whitesell required him to work in excess of his medical limitations and that he did not receive an ergonomic review were not included in his administrative charge, and his evidence concerning these allegations does not show that he was discharged or treated differently with respect to his attendance because of his carpal tunnel syndrome.

## VII. Conclusion

Aramburu has not shown himself entitled to a trial on any of his claims. He failed to counter the evidence supporting the legitimacy of the reason for his discharge. Thus, he failed to demonstrate a genuine issue of material fact that his discharge was the result of his ancestry or

28

that the reason offered by Boeing and Whitesell was a mere pretext.  He failed to show that he was treated differently under Boeing's attendance policy than similarly situated non-minority employees.  He is not entitled to an adverse inference against Boeing and Whitesell under the spoilation doctrine because he failed to present sufficient evidence that Whitesell lost certain of his 1991 attendance records in bad faith.  Indeed, Boeing presented other attendance documents reflecting Aramburu's absences in 1991.  Aramburu also fails to present evidence, either direct or circumstantial, that Whitesell harbored a discriminatory animus against Mexican-Americans.  Aramburu failed to exhaust his administrative remedies on his claims for a hostile environment and for discriminatory denial of a transfer under Title VII and the Kansas Act Against Discrimination.  Moreover, he failed to present evidence of an objectively hostile environment or that he was denied a transfer on account of his ancestry.  Finally, Aramburu failed to present evidence that he was discharged on account of his carpal tunnel syndrome.  Therefore, we affirm the district court's grant of summary judgment in favor of Boeing and Whitesell.[13]

---

[13]     As a final matter, Aramburu appeals the district court's order granting the defense motion to determine the place of trial, which transferred trial of the case from Topeka, Kansas, to Wichita, Kansas.  Given our affirmance of the summary judgment on Aramburu's claims, we do not consider this portion of the appeal.