Barbara POORE, Plaintiff,

v.

ROOKS COUNTY, KANSAS; Jack Turnbull; Gary LeRock; Dean Strutt; Normand Hrabe; and Rooks County, Kansas Board of County Commissioners, Defendants.

No. 97–1082–JTM.

United States District Court, D. Kansas.

Jan. 20, 1999.

**1276**

### MEMORANDUM ORDER

MARTEN, District Judge.

The present action involves a claim for gender discrimination by plaintiff Barbara Poore against her employer, Rooks County, Kansas. Rooks County has moved for summary judgment on Poore's claims. For the reasons stated herein, the court will grant the county's motion.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Rooks County is a small county in northwest Kansas of about 6,000 people. In 1988, Barbara Poole began working as the secretary of the County's Road and Bridge Department. She has remained in that position to the present day. In 1995, the department had 34 employees. Poore was the only secretary, and the only female employee.

The other 33 employees were laborers, mechanics, truck operators, patrol operators, heavy equipment operators, and supervisors. Their positions were classified from I to IX. The salary for each position was based on the classification. As the classification for a position increased, the salary also increased.

The plaintiff attempts to controvert this fact by citing evidence indicating that length-of-service was occasionally a factor in Road and Bridge employees receiving wages. The evidence indicates that, on at least some occasions, employees were given raises after reclassification, although their job duties did not materially change and the raise was primarily for reasons of longevity. It remains uncontroverted, however, that Poore was not employed under the classification system applied to other, nonclerical employees in the Road and Bridge Department.

The classification system included: Classification I, for part-time laborers; Classification II, for new-hire mechanics; Classification III, for laborers, equipment and truck operators; Classification IV, for patrol section operators; Classifications V and VI, for patrol and equipment operators; Classification VII, for the surfacing crew chief and the

bridge crew chief; Classification VIII, for the Road Foreman and Shop Foreman; and Classification IX, for the Road Supervisor.

Poore's position did not have a I to IX classification. The Road and Bridge secretary has been designated Deputy I for salary rate purposes, like clerical employees in other county departments. Poore admitted in her deposition that her job functions are different from the job functions of the classified employees in the Road and Bridge Department. In responding to a question by the Kansas Human Rights Commission Investigator about comparing her job to those of the other workers in the department, Poore said "I'm the secretary and they run the equipment. It's like comparing apples to oranges." (Poore Dep.Exh. 13).

In her response to the motion for summary judgment, Poore attempts to controvert her previous testimony by stating that Alvin Perez, the Road Supervisor, "was able to compare Barbara Poore's job performance to several other Road and Bridge Manual Labor employees, and to classify her job performance as just as good and reliable." (Resp., at 4). Perez's deposition makes clear that he simply testified, in terms of her general performance, he felt Poore was doing a good job; he did not testify that the requirements of the jobs were similar in any substantial respect. Poore does not attempt to retract her testimony that comparing her position with the other workers in the department was "comparing apples to oranges."

Poore's duties are clerical and performed in the office. She does not operate heavy equipment or repair equipment like a mechanic.

The Board of County Commissioners of Rooks County consists of three commissioners who are elected to serve four-year terms. On December 13, 1994, the county commissioners approved the reclassifications for the following eight employees in the Road and Bridge Department.

| Employee | Previous Classification | New Classification |
|---|---|---|
| Rick Griffin | III | IV |
| David Schonthaler | II | III |
| Chris Lambert | III | IV |
| Kelly Richmond | II | III |
| Dave Bouchey | II | III |
| Tom Nicholas | II | III |
| Rusty Morgan | III | IV |
| Ronnie Strutt | VI | VIII |

On January 3, 1995, the county commissioners voted to change Poore's secretary position from full-time to part-time. The change was to be effective on January 25, 1995. The minutes of the commission meeting indicate that Poore's hours were cut because of the need to cut expenses. Poore admitted in her deposition that the commissioners may have believed that they could not afford her full-time salary after they had reclassified and given raises to the eight employees the previous month.

In her response, Poore again attempts to escape from her own admission by citing the testimony of Alvin Perez. Perez testified that, in his opinion, there was money in the budget to keep Poore on full time. It is uncontroverted, however, that Perez admitted in his deposition that the commissioners had expressed concern about the level of expenses. Perez himself testified that there was uncertainty in his mind about whether the county would be able to meet its payroll and pay for expenses associated with the County Sanitation Department's landfill. (Perez dep. at 101). Perez has admitted the commissioners knew more about the budget than he did because they had input from the county's auditor. Similarly, evidence submitted by Poore that the county did in fact ultimately remain in budget for both the 1995 Road and Bridge Department and landfill expenses does not alter the uncontroverted evidence that, in January of 1995, there were real concerns about going over budget.

On January 9, 1995, Dean Strutt took office as a new county commissioner, replacing Normand Hrabe.

For payroll purposes, Rooks County begins a month on the 25th, and ends it on the following 24th. On January 25, 1995, Poore began working a part-time schedule of 24 hours per week, except for the last week of each month, in which she would work 40 hours.

On March 14, 1995, Poore came to a commission meeting and indicated that she was not able to keep up with her clerical duties under her new schedule. Shortly afterward, her schedule was increased to 36 hours per week for the first three weeks of the month.

Poore was supervised by Road Supervisor Alvin Perez. On May 30, 1995, Perez requested that Poore be returned to full-time status because "we started getting way behind in paperwork." (Perez dep. at 175). The county commissioners approved Poore's return to full-time status retroactive to May 25, 1995.

Poore's hours were only reduced for four months (January 25 to May 25), during which she was allowed to work more than her scheduled hours. She worked 130 hours in February, 125 hours in March, 156 hours in April, and 166 hours in May.

Because Poore performed some work for the Sanitation Department in connection with the landfill, about 15% of her salary was paid from that department's budget. Just before the reduction in her hours, Poore was paid a monthly salary of $1355.42, including longevity pay. This was more than six of the eight employees who had been reclassified and given raises in December of 1994.

While she worked part-time, Poore was paid on an hourly rate. She was paid $1016.60 in February, $977.51 for March, $1219.92 for April, and $1298.12 for May. She was thus paid $909.53 less than she would have received as a full-time employee.

Under the county's policy, only full-time employees have their health insurance premiums of $493.57 per month paid by the county. During the period she was part-time, Poore was allowed to continue her health insurance coverage through the County by paying the premiums. While she was on part-time status, Poore paid $1,974.28 in insurance premiums.

Poore was born on August 6, 1950. She was 44 years old when her hours were reduced.

Two of the eight persons reclassified in December, 1994 were older than Poore. At that time, Tom Nicholas was 48, and Ronnie Strutt was 53.

In April of 1993, Poore wore a wrestling T-shirt to work. A fellow employee, Doug Cooper, asked Poore if she liked to wrestle. Poore said something like "it's not bad." Then Dean Strutt said, "No, you're like me. You're too old and too fat." Strutt worked in the Road and Bridge Department, but he was not Poore's supervisor.[1] Poore has stated in her deposition that this comment does not form any basis for her claim of age discrimination.

Poore unsuccessfully ran for county clerk in 1992. She also raised questions concerning the bidding by Turnbull Oil Company, a supplier to the Road and Bridge Department, and "leaked" the information about Strutt's promotion to Shop Foreman in December of 1995, before its formal announcement. Poore has testified these events may have played a role in why her hours were cut in 1995.

On May 1, 1995, Poore filed a complaint with the KHRC, in which she alleged sex discrimination under Title VII and violation of the Kansas Age Discrimination in Employment Act. She does not specifically allege violation of the federal ADEA, but she does allege a claim for damages "for willful discrimination against me based upon my age," and does reference "42 U.S.C. § 621 et seq." as a basis for her claims. The ADEA is actually reported at 29 U.S.C. § 621 et seq. The EEOC notice of May 1, 1995 sent to Rooks County alleges sex discrimination under Title VII but not age discrimination under the ADEA. The right to sue letter sent to Poore on November 21, 1996, refers only to her Title VII claim and not to any ADEA claims. The EEOC notice does not indicate that any claim of age discrimination had been advanced.

After an investigation, the KHRC made a determination of "no probable cause" with respect to Poore's discrimination charge.

The current county commissioners are Gary LeRock, Ted Lambert, and Dean Strutt. Strutt will be leaving office in January, 1999.

### Conclusions of Law

The defendants have moved for summary judgment on both the claims for sex and age discrimination. With respect to both claims, the defendants' arguments are similar: the plaintiff has failed to establish a prima facie case, since she has not demonstrated that she did not receive treatment accorded other,

1. Strutt apparently did become a county commissioner about a year and a half after this incident.

similarly situated employees and because plaintiff has presented no evidence of any invidiously discriminatory motive on the part of the defendants. With respect to the age discrimination claim, defendants present a different argument—that no such claim was presented to the EEOC in Poore's administrative claim.

The court finds that Poore adequately raised her argument of age discrimination for administrative review, and that the defendants have failed to present a valid rationale for dismissing the case on those grounds. Under the facts of the case, adequate notice was given. However, the court also finds that, although Poore's brief does have some discussion on the issue of age discrimination in the context of discussing the question of notice in her response, there is no discussion whatsoever on the merits of Poore's age discrimination claim. The claim has been effectively abandoned.

As to her sex discrimination claim, the court finds it must also be dismissed. As a part of her claim under Title VII, the plaintiff is obliged to show that she was similarly situated to other, preferentially treated employees. Poore contends the eight Road and Bridge employees who received raises in December, 1994 were similarly situated to her, because they worked under the same supervisor. In support of this position, Poore relies on the Tenth Circuit's decision in *Aramburu v. The Boeing Co.,* 112 F.3d 1398 (10th Cir.1997). In *Aramburu,* the court stated:

> To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness. *Elmore v. Capstan, Inc.,* 58 F.3d 525, 529–30 (10th Cir.1995). "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Wilson v. Utica Park Clinic, Inc.,* No. 95–5060, 76 F.3d 394, 1996 WL 50462 (10th Cir. Feb.7, 1996) (unpublished) (*citing Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531, 1547 (S.D.N.Y. 1986), *aff'd,* 814 F.2d 653 (2d Cir.1987)). A court should also compare the relevant employment circumstances, such as work his-

tory and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated. *See David v. City and County of Denver,* 101 F.3d 1344, 1359–60 (10th Cir.1996) (discussing circumstances to be compared); *Flasher,* 986 F.2d at 1320 (same); *see also Furr v. Seagate Technology, Inc.,* 82 F.3d 980, 986 (10th Cir.1996) (rejecting plaintiff's evidence of differential treatment because the other employees were not similarly situated), *cert. denied sub nom. Doan v. Seagate Technology, Inc.,* — U.S. ——, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997).

112 F.3d at 1404.

The plaintiff only cites one portion of this discussion (the second sentence) to support her contention that similarly situated employees can be determined solely on the basis of having the same supervisor. Although the question of whether the employees subjected to comparison report to the same supervisor is certainly one element in determining whether employees are "similarly situated," it is by no means the only element. The court believes the "same supervisor" argument advanced by plaintiff is a misreading of the law, and should be rejected. As the Tenth Circuit recently stated in *Martinez v. Northern Rio Arriba Electric Co-op.,* No. 96–2254, 1998 WL 45493, (10th Cir. February 5, 1998), the obligation is on the plaintiff to show "that she was similarly situated to [preferentially treated employees] *'in all material respects.'"* 1998 WL 45493, at *1 (emphasis added).

The court in *Aramburu* expressly directs the court to "compare the relevant employment circumstances, such as work history and company policies." Further, the authorities cited in *Aramburu* clearly indicate that the employees' positions are to be considered. *See Furr v. Seagate Technology,* Inc, 82 F.3d 980, 986–87 (10th Cir.1996) (drawing distinction between employees on basis of job classifications, and concluding plaintiffs' comparison wrongly "grouped all employees together regardless of specialty and skill").

Moreover, it is important to note that cases such as *Aramburu* and *Wilson v. Utica Park Clinic, Inc.,* No. 95–5060, 76 F.3d 394,

1996 WL 50462 (10th Cir. Feb.7, 1996) involve claims of discriminatory disciplinary actions. In such cases, it is natural to accord great weight to whether the employees reported to the same supervisor for purposes of discipline. In the present case, on the other hand, the plaintiff alleges a discriminatory reduction in hours, as the result of a decision made not by her supervisor but by the county commission. Under these circumstances, the court is obliged to look beyond the mere fact of whether the employees were in the Road and Bridge Department. *See Beaver v. Prudential Ins. Co.*, No. 94–4181–DES, 1996 WL 109547, at *5 (D.Kan.1996) (plaintiff had failed to support her claim for discriminatory denial of a promotion "by identifying any similarly situated clerical employees who were promoted during the time of the plaintiff's employment with Prudential"). *See also Majka v. City of Chicago*, No. 93–C–6213, 1995 WL 654026 (N.D.Ill. 1995) ("Plaintiffs have not plead sufficient factual allegations to show that nurses and clerical workers were similarly situated").

Here the plaintiff has failed to present any evidence which would permit a rational fact finder to conclude that the eight employees who received raises in December, 1994 were "similarly situated" to her, so as to create any inference of discriminatory intent. Throughout the litigation, the focus was on the treatment of these eight individuals. In her response to the motion for summary judgment, Poore now argues, apparently for the first time, that she was similarly situated to Rick McLaughlin (the operator of the landfill) and Alvin Perez (the Road Supervisor). Plaintiff provides no evidence that these individuals were comparable to her in the material aspects of their jobs. To the contrary, the evidence submitted by defendants demonstrates that these individuals performed significantly different jobs than plaintiff. McLaughlin was in charge of the day-to-day operation of the landfill, and maintained the landfill through operating heavy equipment. Perez was a supervisor of the department whose tasks were more than clerical.

The plaintiff has also failed to provide any direct evidence that her reduction in hours was the product of gender—or age—discrimination. There is some evidence of an animosity between Strutt and other commissioners on the one hand, and Poore on the other. But no evidence of any invidious motive; no evidence of any gender bias. Thus, there are allegedly some statements heard by third parties—not Poore—that Commissioners Strutt, Hrabe, and Turnbull made comments about terminating Poore. None of these comments was ever made to Poore, and it is uncontroverted that the threats of terminating Poore's employment were never carried out. The plaintiff herself has admitted in her deposition that some of the ill feelings against her were due to her actions, not her gender.