107 F.3d 870
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cheryl BECKER, Plaintiff-Appellant,
v.
FEDERAL EXPRESS CORPORATION, Defendant-Appellee.
 No. 96-1196.
 United States Court of Appeals, Sixth Circuit.
 Feb. 25, 1997.
 
 Before: KENNEDY, NELSON, and VAN GRAAFEILAND,* Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment for the defendant in a civil rights action brought under Michigan's Elliott-Larsen Civil Rights Act. The plaintiff, Cheryl Becker, alleges that the defendant, Federal Express Corporation ("FedEx"), unlawfully terminated her employment in retaliation for the filing of other civil rights complaints and grievances. Upon de novo review, we conclude that the judgment of the district court must be affirmed.
 
 
 2
 * Ms. Becker became a full-time courier for FedEx, working out of a station in Kalamazoo, Michigan, in 1982. She held the same job until October 31, 1991, when she was discharged following an incident at a Red Lobster restaurant in Battle Creek.
 
 
 3
 Ms. Becker arrived at the restaurant to deliver a package at lunch time on October 21, 1991. Diane McGee, the Red Lobster employee who normally signed for packages, was busy at the cash register. While waiting for Ms. McGee, Ms. Becker notified FedEx through her electronic "tracker" that the Red Lobster package had been delivered and that she had obtained a signature. (Ms. Becker programmed the message in advance so that it would be ready to transmit as soon as Ms. McGee was free to accept delivery; by accident, however, the message was sent prematurely.) Rather than waiting for the signature, Ms. Becker signed Ms. McGee's name on the delivery record, placed the package on the counter, and left the restaurant.
 
 
 4
 The manager of the restaurant called FedEx to complain about Ms. Becker's actions and to ask that she be reprimanded. Ms. Becker was suspended with pay the following day. An investigation ensued, in the course of which Ms. Becker admitted having forged the signature.
 
 
 5
 Ms. Becker was notified on October 31, 1991, that she was being discharged for having violated FedEx's "Acceptable Conduct" policy. This policy prescribes dismissal for "[d]eliberate falsification of ... Company-related documents, including electronic records."[1]
 
 
 6
 Ms. Becker made a complaint to the United States Equal Employment Opportunity Commission in June of 1992. Eighteen months later the EEOC filed suit against FedEx on Ms. Becker's behalf pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. The nature of the agency's allegations is not disclosed in the papers before us. On June 30, 1994, the EEOC stipulated to the dismissal of the action with prejudice, and the district court dismissed the case a few days later.
 
 
 7
 Meanwhile, on June 9, 1994, Ms. Becker filed the present action against FedEx in a state court. Claiming a violation of the Elliott-Larsen Civil Rights Act, M.C.L. §§ 37.201 et seq., Ms. Becker alleged that FedEx had discriminated against her because of her sex and national origin (part American Indian), had created a hostile work environment, and had retaliated against her by terminating her employment because of civil rights complaints previously filed with FedEx and with the EEOC. FedEx removed the action to federal court on diversity grounds.
 
 
 8
 Discovery followed, and FedEx then moved for summary judgment. The district court granted the motion in an order entered on January 12, 1996. An opinion accompanying the order addressed in some detail the plaintiff's claims of sex discrimination and national origin discrimination. The district court did not discuss the retaliation claim at all, however, despite the fact that the issue was briefed by both sides. It is only the granting of summary judgment on the retaliation claim that Ms. Becker assigns as error here; there has never been any contention that the district court erred in its disposition of the claims of sex and national origin discrimination.
 
 II
 
 9
 The Elliott-Larsen Civil Rights Act makes it unlawful to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." M.C.L. § 37.2701(a). This language is similar to that of § 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). See Johnson v. Honeywell Info. Sys., Inc., 955 F.2d 409, 415 n. 1 (6th Cir.1992). Michigan courts consult Title VII decisions in resolving questions under the state statute, see Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1311-12 (6th Cir.1989), and the "shifting burdens analysis" used in Title VII actions is used as well in cases arising under the Elliott-Larsen Act. Id. at 1311.
 
 
 10
 Under the shifting burdens analysis, also known as the "McDonnell Douglas-Burdine analysis,"[2] the plaintiff bears the burden of establishing, by a preponderance of the evidence, a prima facie claim of unlawful discrimination or retaliation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). Once the plaintiff establishes a prima facie case, a presumption arises that the employer unlawfully discriminated against the employee. This presumption "places upon the defendant the burden of producing an explanation to rebut the prima facie case--i.e., the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.' " Hicks, 509 U.S. at 506-07 (quoting Burdine, 450 U.S. at 254).
 
 
 11
 * For Ms. Becker to establish a prima facie case of unlawful retaliation under the Elliott-Larsen Act, she must show "(1) that [she] opposed violations of the Act or participated in activities protected by the Act, and (2) that the opposition or participation was a significant factor in an adverse employment decision." Booker, 879 F.2d at 1310. "The 'significant factor' standard ... requires a showing of more than a 'causal link.' A factor can be a 'cause' without being 'significant.' Only the latter is sufficient to show retaliatory discharge." Id. (internal quotation marks omitted). The plaintiff must "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.' " Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir.1990) (emphasis added) (quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982)).
 
 
 12
 FedEx concedes that Ms. Becker offered sufficient proof that she engaged in protected activity prior to her discharge in 1991. As far back as 1987, Ms. Becker challenged a reprimand she had received for failing to show up to work. The company later agreed to remove a letter on the incident from Ms. Becker's file, and Ms. Becker agreed to drop her complaint. Later in 1987 Ms. Becker filed complaints with FedEx's equal employment opportunity office asserting that she was being discriminated against because of her American Indian blood. The alleged acts of discrimination involved an assignment to an out-of-town delivery route while "a white female with less seniority was assigned a more favorable in town delivery route," and a denial of "split shift premium pay" while a "similarly situated white female was allowed to receive split shift premium pay." After reviewing Ms. Becker's claims, the company decided to let her have the split shift premium pay; the reasons given by Ms. Becker's supervisor for denying her a split shift were invalid, FedEx concluded. As for the route assignment claim, the company's investigation showed that the assignment was not based on Ms. Becker's being an American Indian.
 
 
 13
 In August of 1988 Ms. Becker filed complaints with the Michigan Department of Civil Rights and the United States EEOC alleging that she had been discriminated against with respect to disciplinary actions and compensation. Ms. Becker claimed she was "disciplined for a company violation" while "there have been other white male and female coworkers who have committed similar violations and not disciplined." Ms. Becker also claimed that she had been sent home without pay when she became ill and that her medical bill was not paid, while "[t]here have been white coworkers who have become ill and compensated and medical bills paid by the company." Ms. Becker also alleged that white co-workers had been jumped ahead of her in promotions to key positions. The Michigan Department of Civil Rights investigated these allegations and concluded that there was no evidence of unlawful discrimination. The EEOC reached the same conclusion.
 
 
 14
 Ms. Becker filed another grievance with the company in April of 1989, although she later dismissed it voluntarily. There is no evidence of any subsequent protected activity on her part prior to the discharge.
 
 
 15
 The question presented is whether Ms. Becker has pointed to facts indicating that her participation in protected activity "was a significant factor in an adverse employment decision." Booker, 879 F.2d at 1310. To defeat the motion for summary judgment, she had to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.' " Zanders, 898 F.2d at 1135 (quoting Cohen, 686 F.2d at 796).
 
 
 16
 Succinctly stated, Ms. Becker's submission comes to this:
 
 
 17
 "(1) Becker opposed violations of the Elliott-Larsen Act (to the regional/home office and later the state), (2) normal disciplinary procedures were bypassed to terminate Becker, (3) Becker was an outstanding employee for 11 years, (4) Becker was terminated without any written statement from a complainant, (5) other employees committed similar terminable offenses but were not terminated, and (6) the Defendant later admitted that Becker's transgression did not merit termination."
 
 
 18
 We are not persuaded.
 
 
 19
 The averment that Ms. Becker "opposed violations of the Elliott-Larsen Act" is merely a restatement of the protected activity needed for the first element of a prima facie retaliation claim. Proof of protected activity is not proof that the activity was the reason for the adverse employment action.
 
 
 20
 The significance of the protected activity dims, moreover, where, as here, there has been a significant lapse of time between such activity and the adverse action. Ms. Becker filed her last grievance with the company in April of 1989, but her employment was not terminated until more than two and one half years later. A lapse of "almost three years," coupled with evidence that the termination was justified, convinced the court in Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir.), cert. denied, 459 U.S. 1071 (1982), that the plaintiff had "failed to establish a prima facie case of retaliation." Burrus was recently cited by this court in Harrison v. Metropolitan Gov't of Nashville and Davidson County, 80 F.3d 1107, 1118 (6th Cir.), cert. denied, 117 S.Ct. 169 (1996), for the proposition that "the temporal proximity of the adverse action to the protected activity" is relevant to the question whether there is a causal connection between the two.
 
 
 21
 Ms. Becker has not shown that FedEx failed to follow normal disciplinary procedures in discharging her. It is true that Daniel T. Saville, the relatively new operations manager who made the decision to fire her, testified at his deposition that Ms. Becker was the only employee he had discharged in his first five or six months on the job without a warning letter or a performance reminder letter. Mr. Saville's statement is not indicative of any failure to follow normal disciplinary procedures, however. The FedEx Acceptable Conduct policy requires dismissal for "[d]eliberate falsification of ... Company-related documents," and there has been no showing that a warning letter or performance reminder letter is required first. Neither has there been any showing that a written statement from a complainant is required.
 
 
 22
 The record does not support the contention that "other employees committed similar terminable offenses but were not terminated." Ms. Becker says that two white males, Steven McKinney and Louis Lussier, and a white female, Desiree Tucker, were not discharged after they dropped off packages without obtaining proper signatures. But none of these employees was shown to have deliberately falsified company-related documents--and this is the offense for which the prescribed penalty is dismissal.
 
 
 23
 Ms. Becker argues that the three individuals in question "necessarily committed falsification offenses," since each courier has to sign a "delivery record" at the end of the day reflecting that a signature is on file. Assuming that such delivery records were signed, however, the employees would be similarly situated only if they were guilty of "deliberate" falsification, as opposed to negligent falsification. There has been no showing that the other employees were not simply negligent. It appears, moreover, that Ms. Becker herself once left a package without obtaining the proper signature, and she too received only a warning.[3]
 
 
 24
 The suggestion that FedEx "admitted that Becker's transgression did not merit termination" is an overstatement. George Moore, an executive of the company, was "not convinced of the intent to falsify for personal gain" in this case, and he would have been "more comfortable with a warning letter and suspension without pay." This is not an admission by FedEx that Ms. Becker's actions did not merit termination; it is simply an indication that at least one FedEx official disagreed with the company's written policy.
 
 
 25
 Ms. Becker also says that Fred Smith, the chief executive officer of FedEx, was indicted in 1973 for forging an attorney's name to a corporate resolution in order to obtain a loan for the company. Mr. Smith was acquitted of this charge, however, presumably because the jury believed that he had authority to sign for the attorney. And the fact that Mr. Smith was not discharged upon being indicted 20 years ago bears little relevance to the question whether the current FedEx management retaliated for protected activities engaged in by Ms. Becker many years later.
 
 
 26
 Ms. Becker's claim that she was an "outstanding employee" is supported by her performance evaluations. On a scale of one to seven, with seven being the strongest, Ms. Becker's overall performance rating from 1986 to 1991 averaged 6.05. A score of six is described by the company as "well above satisfactory." Standing alone, however, these performance evaluations hardly demonstrate that her protected activities were "the likely reason" for her discharge in 1991.
 
 B
 
 27
 Even if we were to assume that Ms. Becker established a prima facie case of unlawful retaliation, we should have to affirm the judgment because of her failure to offer any evidence that the legitimate, nondiscriminatory reason offered for her termination was really a pretext for discrimination. It is undisputed that Ms. Becker forged the signature of the Red Lobster employee on October 21, 1991. It is undisputed that, on its face, the FedEx Acceptable Conduct policy prescribed dismissal for "[d]eliberate falsification of ... Company-related documents." The record contains a letter notifying Ms. Becker that she was being suspended pending investigation of whether she had violated the Acceptable Conduct policy, along with a letter notifying her that she was being discharged for violating this policy. FedEx clearly met the "burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.' " Hicks, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 254).
 
 
 28
 Once FedEx produced this evidence, Ms. Becker was required to demonstrate that " 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " Id. at 515 (quoting Burdine, 450 U.S. at 253). To prove the reason a pretext, Ms. Becker had to prove "that the reason was false, and that discrimination was the real reason." Id. Ms. Becker has offered no such evidence--and summary judgment was appropriate for that reason as well. See Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir.1993).
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland, United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 The company's standards of conduct are to be distinguished from its "job performance" standards. According to the FedEx "Performance Improvement" policy, an employee who violates job performance standards might receive counseling, a "reminder"--which is a document signed by the manager and the employee--or a discharge if deficiencies are not corrected. However, the policy continues, "[s]erious violations of Company or departmental rules may be misconduct for which an employee may be immediately suspended pending a complete investigation. The Acceptable Conduct policy should be referenced for additional information regarding infractions considered to be misconduct and alternative management actions." It was the Acceptable Conduct policy under which Ms. Becker was discharged, not the Performance Improvement policy
 
 
 [2]
 See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981)
 
 
 [3]
 In her brief on appeal, Ms. Becker argues that Louis Lussier, Cindy Collick, Jim Wolf, and Jim Prihoda "committed time card falsification but were not terminated." No such argument was made before the district court, however, and we decline to consider it here, the defendant not having had any reason, while the record was still open, to introduce whatever facts might have been available to refute the argument