**Manuel ROBLEADO, Plaintiff,**

v.

**DEFFENBAUGH INDUSTRIES, INC., Defendant.**

**No. CIV.A. 00–2108–GTV.**

United States District Court,
D. Kansas.

March 7, 2001.

Kirk Holman, Kansas City, MO, for Plaintiff.

Karen R. Glickstein, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, Monica M. Fanning, Foland & Wickens, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff Manuel Robleado, a fifty-five-year-old Hispanic male, is an employee of Defendant Deffenbaugh Industries. Beginning in June of 1999, Plaintiff was passed over for several promotions which he felt he should have received. When he was asked to train one of the employees who received a promotion, Plaintiff complained that Defendant was discriminating against him. He filed a formal Equal Employment Opportunity Commission ("EEOC") complaint in January of 2000. Following his complaints, Plaintiff was disciplined several times. Plaintiff filed the instant suit, alleging that he was denied the promotions on the basis of his age and race in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; and 42 U.S.C. § 1981. Plaintiff further alleges that in retaliation for his complaints of discrimination, he was disciplined in violation of Title VII and § 1981.

The case is now before the court on Defendant Deffenbaugh Industries, Inc.'s Motion for Summary Judgment (Doc. 36). For the reasons stated below, the court grants Defendant's motion.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. See *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See *id.* The court must consider the record in the light most favorable to the nonmoving party. See *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

## II. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiff's case. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff is a fifty-five-year-old Hispanic male who has worked as a welder for Defendant for more than fifteen years. Beginning in July or August of 1999, Plaintiff made several complaints of discrimination. Three times, he claimed broadly that he was being "discriminated against," without more explanation. First, Plaintiff complained of discrimination to Dan Schloss (Superintendent of the Weld Shop) and William Sublette (Assistant Director of Fleet Management). Dan Schloss asked Plaintiff for specifics as to his complaint, and William Sublette asked Plaintiff to "write down anything that [he] was saying to help [him] understand where [Plaintiff] was coming up with this conclusion that [he] was discriminating against him," but Plaintiff neglected to do either. In November of that year, Plaintiff made another general complaint of discrimination to Robert Ferris. Finally, in early January of 2000, Plaintiff indicated to Robert Ferris (Weld Shop Manager), William Sublette, and Donald Newcomb (lead of Plaintiff's shift) that he felt discriminated against. In addition to these three broad assertions of discrimination, Plaintiff also filed a formal complaint with the EEOC on January 14, 2000. The EEOC sent notice of the charge to Defendant on January 28, 2000.

In Plaintiff's formal EEOC charge, he listed the earliest date of discrimination as August of 1999. He complained that he was denied a promotion to "leadman" (lead of the shift) because of his age and race. Defendant did not post lead positions. Rather, supervisors approached qualified employees for promotion when vacancies developed. Plaintiff's complaint is that he was not approached.

Presumably, the promotion denial to which Plaintiff was referring was for the lead position awarded to Don Newcomb in September of 1999. .Plaintiff also claims he was unfairly denied three other promotions to lead welder: two in June of 1999, and one in February of 2000. As evidence of racial discrimination, Plaintiff states that Andy Perez, a Hispanic, was not asked to be a lead position "years ago" (maybe five or six). However, Mark Sanchez, who was promoted to the lead position in February of 2000, was Hispanic. The court also notes that Mark Sanchez and Dan Nick, who received one of the two June positions, were both over forty years old. Moreover, another employee over forty was asked to assume the lead position awarded to Don Newcomb, but he declined.

Defendant states that Plaintiff was not selected for a lead position because of Plaintiff's attitude-Plaintiff did not "project a positive and professional image"; his lack of "people skills"; and his inability and/or unwillingness to perform some of the core functions of the lead position. Plaintiff's supervisor from 1994 through 1998, Donald Townsend, testified in deposition that Plaintiff "got hot" with him most of the times he confronted Plaintiff. Donald Townsend stated that Plaintiff "was mostly [his] biggest problem."

The formal EEOC charge also alleges that in retaliation for Plaintiff's assertion that he was being discriminated against,

Plaintiff was issued a written warning and given a suspension. The written warning and suspension to which Plaintiff presumably was referring occurred in early January of 2000. Plaintiff and Lee Cossins, a Caucasian employee, had been disciplined for allegedly refusing to sweep the shop. Lee Cossins signed his Employee Warning Report, but Plaintiff argued with his supervisors and maintained that he did not refuse to sweep the shop. During the argument, Plaintiff raised his voice and pointed his finger at his supervisors. Plaintiff was suspended for two days for alleged insubordination and being "vulgar," "loud," "irritable," and "violent." Lee Cossins was not suspended.

On February 28, 2000, Plaintiff was disciplined again with another two-day suspension for insubordination. Plaintiff left work on February 28, a Monday, (after working for part of the day), and did not return to work until the following Monday. Plaintiff was scheduled to work on Wednesday, March 1, but Plaintiff understood the two-day suspension to include Wednesday. When he returned to work, Plaintiff received a one-day suspension for his failure to report to work the previous Wednesday. As a result of the March 1 absence, a subsequent absence, and three "tardies," Defendant conducted an "attendance review" of Plaintiff in June of 2000. A report was placed in Plaintiff's personnel file.

Plaintiff's final complaint of retaliation involves numerous "write ups." A "write up" is basically documentation "to track somebody's performance." All of Plaintiff's write ups were handwritten notes of various conduct.[1] Most of the write ups at issue were in Plaintiff's supervisor's or leadman's personal files-not Plaintiff's permanent personnel file.[2] However, a trilogy of write ups made in June of 2000 was placed in Plaintiff's personnel file. Plaintiff was never approached or counseled about the subject of many of the write ups. In fact, the court can find no evidence in the record that Plaintiff was ever disciplined as a result of any of the write ups.

The afore-mentioned facts are not comprehensive. Additional facts may appear in this opinion as necessary.

## III. DISCUSSION

### A. Failure to Promote Claims

#### 1. Title VII & ADEA Exhaustion Requirement

 Plaintiff claims that he was denied four promotions based on his race and age in violation of Title VII, § 1981, and the ADEA. His Title VII race discrimination claim and ADEA claim are subject to an exhaustion requirement; before bringing a Title VII or ADEA action, a plaintiff must exhaust his or her administrative remedies.[3] See *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 (10th Cir.1997) (Title VII) (citing *Jones v. Runyon*, 91 F.3d 1398, 1400 (10th Cir.1996)); *Smith v. Bd. of County Comm'rs*, 96 F.Supp.2d 1177, 1185 (D.Kan.2000) (ADEA). Specifically, a plaintiff must file an administrative charge with the EEOC. The purpose of this prerequisite is to ensure that employers have

---

**1.** Most of the write ups concerned Plaintiff's tardiness and attitude.

**2.** In his brief, Plaintiff repeatedly states that the write ups were placed in his personnel file. However, he offers no evidence to support this allegation. Defendant has produced deposition testimony which states that the write ups were kept separate from Plaintiff's personnel file and an affidavit of the Personnel Director which states that the only handwritten notes in Plaintiff's personnel file are notes written in June of 2000.

**3.** 42 U.S.C. § 1981 does not contain an exhaustion requirement. See *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 n. 9 (10th Cir. 1997).

notice of the charges and to provide employers with an opportunity to voluntarily alter any illegal behavior. See *Aguirre v. McCaw RCC Communications, Inc.*, 923 F.Supp. 1431, 1433 (D.Kan.1996). After a plaintiff has complied with this administrative requirement, he or she may file suit. "The suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge." *Aramburu*, 112 F.3d at 1411 (citing *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988)). However, courts will disregard allegations not "reasonably related" to the listed allegations; to allow consideration " 'would circumvent the administrative agency's investigatory and conciliatory role as well as deprive the charged party [of] notice of the charge.' " *Smith v. Bd. of Pub. Utils.*, 38 F.Supp.2d 1272, 1284 (D.Kan.1999) (quoting *Harrell v. Spangler, Inc.*, 957 F.Supp. 1215, 1219 (D.Kan.1997)) (internal quotation marks and citation omitted). "[W]here a retaliatory act occurs prior to the filing of a charge and the employee fails to allege the retaliatory act or a retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge." *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.1997).

In the instant case, Plaintiff filed an EEOC charge on January 18, 2000. The charge stated that the earliest date of discrimination/retaliation was August of 1999. Two of Plaintiff's four lost promotion opportunities occurred in June of 1999. Because the June claims arose before Plaintiff filed his EEOC charge, the court lacks jurisdiction over the alleged June violations of Title VII and the ADEA.[4]

This leaves two promotion denials allegedly in violation of Title VII and the ADEA: Plaintiff claims he was entitled to

the lead position awarded to Don Newcomb in September of 1999 and the lead position awarded to Mark Sanchez in February of 2000. However, Plaintiff has stated that he does not think that the decision to promote Mark Sanchez in February of 2000 was based on race or age. The court, therefore, is left with only one failure to promote claim to consider under Title VII and the ADEA—the September claim. Because 42 U.S.C. § 1981 does not require exhaustion, however, the court will consider the June claims as well as the September claim under § 1981.

### 2. Title VII and § 1981

Plaintiff claims that he was denied a promotion because of his race in September of 1999, in violation of Title VII. He further claims that the September promotion denial and two June 1999 race-based denials violated 42 U.S.C. § 1981. Plaintiff has not presented direct evidence of Defendant's discriminatory motive. In considering a Title VII or § 1981 claim that lacks direct evidence of discriminatory motive, the court is bound by the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (adopting *McDonnell Douglas* framework used in Title VII cases for claims filed under § 1981). *McDonnell Douglas* provides a three-step, burden-shifting process by which to evaluate Plaintiff's claims. First, Plaintiff must establish a prima facie case of discrimination. See *McDonnell Douglas*, 411 U.S. at 802. Once Plaintiff establishes a prima facie case, the burden shifts to Defendant. Defendant must offer a legitimate reason for the adverse action. See *id.* Finally, if Defendant offers a legitimate reason, the burden returns to Plaintiff. Plaintiff must establish "a genu-

---

**4.** Plaintiff does not dispute that the court lacks jurisdiction over the June claims.

ine dispute of material fact as to whether [Defendant's] proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995).

A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false ...; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances ...; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1230 (10th Cir.2000) (internal citations omitted) (citing *Aramburu,* 112 F.3d at 1404). If Plaintiff can establish a prima facie case and present sufficient evidence of pretext, then his claim survives summary judgment.

Defendant essentially has conceded that, under Tenth Circuit standards, Plaintiff is able to establish a prima facie case.[5] It then becomes Defendant's burden to offer a legitimate reason for choosing not to promote Plaintiff. See *McDonnell Douglas,* 411 U.S. at 802. Defendant has met this burden-Defendant states that Plaintiff did not "project a positive and professional image"; Plaintiff lacked "peo-

ple skills"; and Plaintiff had an inability and/or unwillingness to perform some of the core functions of the lead position.

The burden then returns to Plaintiff to establish that Defendant's proffered reasons for failing to promote Plaintiff are "unworthy of belief." See *Randle,* 69 F.3d at 451. Plaintiff fails to meet this burden. First, Plaintiff directs the court to apply the law of *Martinez v. Wyoming, Dep't of Family Servs.,* 218 F.3d 1133, 1139 (10th Cir.2000). *Martinez* states that "[w]hen an employer contends that a [Title VII or § 1981] plaintiff was not as qualified as the successful candidates, pretext can be inferred from evidence that a plaintiff was in fact more qualified than those chosen." *Martinez,* 218 F.3d at 1139. Plaintiff seems to be insinuating that he was more qualified than the successful candidates. The only evidence in the record that might support Plaintiff's argument is the fact that Plaintiff was asked to train the new lead in September of 1999. However, this evidence also can be used to support Defendant's decision not to promote Plaintiff; Plaintiff's response to the request was, "First you discriminate against me by not giving me the job, now you want me to teach them. I don't think that's right." Plaintiff was reluctant to teach the new lead his job, and one of the responsibilities of a lead is to "guide and coach co-workers in weld shop procedures." Evidence that Plaintiff was asked to train the new lead does not establish that Plaintiff was more qualified for the lead position, and fails to establish pretext.

Second, Plaintiff argues that Defendant's reasons were pretextual because Defendant has no formal procedures in place for promoting employees. Plaintiff

---

5. Defendant denies that Plaintiff was qualified for the lead positions, as required to establish a prima facie case. However, Defendant also recognizes that a dispute over qualifications should be raised at the pretext stage of analysis. See *EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1195 n. 7 (10th Cir. 2000).

refers the court to *Eldred v. Consolidated Freightways Corp.*, 898 F.Supp. 928 (D.Mass.1995) in support of his argument. In *Eldred*, the plaintiff, a woman, repeatedly lost opportunities for promotion to men. See *Eldred*, 898 F.Supp. at 939. The district court found that the employer's "hiring and termination policies were infected with a bias against women." *Id.* The court also noted that the defendant had no formal application processes for promotions and no guidelines for employment decisions. See *id.* The court stated:

> No objective criteria regarding the requirements for promotion were available to guide employees. It was a supervisor's duty to convey the standards for promotions to the employees orally. The only objective factors defendant stated it considered were whether the employee was keeping current with his or her work, whether the employee was cross-training, (that is, learning other jobs), and whether the employee came in on his or her days off. These factors were never reduced to writing. Overall, the process was undefined, arbitrary, and dependent upon the subjective evaluation of the terminal manager.

*Id.* at 933.

*Eldred* is distinguishable from the instant case. The *Eldred* court made a finding that a pattern of discrimination against women existed in the plaintiff's workplace. The court was presented with substantial evidence that the plaintiff was more qualified and received better performance evaluations than the men who received promotions ahead of her. See *id.* at 939. This fact appears to have been more probative to the *Eldred* court than the lack of formal application processes.

In the instant case, the record does not show a pattern of discrimination. To the contrary, the record shows that one of the employees promoted to a lead position instead of Plaintiff was also Hispanic. Fur-

thermore, while Defendant did not have a formal application process for lead positions, the qualifications for the lead position are reduced to writing. *Eldred* is distinguishable, and the court concludes that Plaintiff has failed to establish pretext.

Third, Plaintiff submits that Defendant's reasons were pretextual because the job description of a Welder A (Plaintiff's position) and a lead position were nearly identical. The court rejects this argument. The job descriptions were *nearly* identical, but they were not identical. The lead position required guidance, coaching, and mentoring. Welder A did not. Defendant believes that Plaintiff is not qualified for these tasks, and Plaintiff has presented no evidence tending to establish that this belief is asserted in bad faith. Consequently, Plaintiff's argument fails.

Fourth, Plaintiff maintains that he had never been given a warning before for exhibiting a bad attitude; therefore, an inference of pretext is supported. Plaintiff ignores evidence which states that Plaintiff "got hot" with his former supervisor at any confrontation. Plaintiff also ignores evidence that he was his former supervisor's "biggest problem." Finally, Plaintiff admits that he raised his voice and pointed his finger at his supervisors in the January meeting leading to his first suspension. While Plaintiff may not have previously been admonished for his attitude, the court concludes that the lack of prior admonishment is insufficient to establish pretext.

Finally, Plaintiff argues that Defendant's statement that Plaintiff was not promoted because he could not perform the "core functions" of the lead job was pretextual because Plaintiff *could* perform the "core functions" of the job. One of Defendant's stated reasons for neglecting to promote Plaintiff is that Plaintiff was unwilling to drive manual trucks, a task that

leads often do. Plaintiff counters that he knows how to drive a truck, and he has never refused to drive a truck. He directs the court to William Sublette's deposition testimony that he had never heard Plaintiff refuse to drive a truck or say he was unwilling to drive a truck. Moreover, Plaintiff points out that the lead position job description does not include driving trucks.

The court does not find Plaintiff's arguments persuasive. Even though Plaintiff states that he knows how to operate a manual truck, he has not demonstrated that Defendant's perception that he was unwilling to drive a truck is "unworthy of belief." The record establishes that Plaintiff did not drive a truck around the shop, although other welders did. The record also shows that Plaintiff told William Burns that it was not his job to drive trucks. Furthermore, Dan Schloss testified in deposition that the lead position job description should have included "operation of a manual transmission truck." The "requirement" [6] was not reduced to writing, but Defendant considered it desirable for the lead position. "[J]ust because the reasoning relied upon for a certain action is mistaken does not mean that the reason is pretextual." *Randle*, 69 F.3d at 455. The court concludes that Plaintiff has failed to show sufficient evidence of pretext. Defendant is entitled to summary judgment on Plaintiff's Title VII and § 1981 claims for failure to promote.

### 3. ADEA

■ Again, Plaintiff's only remaining failure to promote claim under the ADEA

involves the lead position awarded to Don Newcomb in September of 1999. Age discrimination claims are analyzed using the *McDonnell Douglas* framework. See *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1153 (10th Cir.1990) ("The framework for assessing the evidence in an age discrimination case parallels that applicable in a Title VII case.") The court will assume that Plaintiff can establish a prima facie case. Defendant has proffered legitimate reasons for failing to promote Plaintiff, as noted above. Consequently, Plaintiff must show that Defendant's reasons are pretextual. Plaintiff has failed to do so; in fact, Plaintiff neglected to address his ADEA claim at all in his response to Defendant's summary judgment motion. Nevertheless, the court has reviewed the record, and finds it probative that three other employees over the age of forty were asked to assume a lead position. After a review of the record, the court concludes that no reasonable jury could find that Defendant's proffered reasons for failing to promote Plaintiff were pretextual. Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

### B. Retaliation Claims–Title VII and § 1981

■ Finally, Plaintiff claims that he was disciplined in violation of Title VII and 42 U.S.C. § 1981, in retaliation for his complaining of discrimination.[7] The *McDonnell Douglas* framework is also used to evaluate retaliation claims. See, e.g., *Lundien v. United Airlines*, No. 00–

---

**6.** Dan Schloss testified that the ability to drive a truck was not a requirement-it was just "desirable."

**7.** In his reply to Defendant's summary judgment motion, Plaintiff also argues that he was denied the February 2000 promotion in retaliation for his complaining of discrimination. The pretrial order does not contain this alle-

gation. "A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." *Hullman v. Bd. of Trustees*, 732 F.Supp. 91, 93 (D.Kan.1990) (citing *Bieber v. Associated Collection Servs., Inc.*, 631 F.Supp. 1410, 1414 (D.Kan.1986)), aff'd, 950 F.2d 665 (10th Cir.1991). The court will not consider Plaintiff's argument.

1083, 2000 WL 1786579 (10th Cir.2000). "A plaintiff establishes a prima facie case of retaliation by showing: (1) he or she engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Kendrick*, 220 F.3d at 1234.

First, Plaintiff cites his numerous write ups as examples of discipline. The court concludes that the write ups do not constitute "adverse employment actions." Without an adverse employment action, Plaintiff is unable to establish a prima facie case.

The Tenth Circuit takes a case-by-case approach in considering whether certain actions constitute adverse employment actions. See *Trujillo v. New Mexico Dep't of Corrections*, No. 98–2143, 1999 WL 194151, at *2 (10th Cir. Apr.8, 1999). Generally, conduct qualifies as an adverse employment action if it "constitutes a significant change in [the plaintiff's] employment status." *Hertenstein v. Kimberly Home Health Care, Inc.*, 58 F.Supp.2d 1250, 1260 (D.Kan.1999). In *Trujillo v. New Mexico Department of Corrections*, the Tenth Circuit summarized several cases where it has found an adverse employment action to exist:

> [I]n *Corneveaux v. Cuna Mutual Insurance Group*, 76 F.3d 1498, 1502 (10th Cir.1996), we found adverse employment action based on the fact that the employee had to "go through several hoops" in order to obtain her severance benefits. In *Jeffries [v. Kansas*, 147 F.3d 1220 (10th Cir.1998) ], we held that verbal interrogation and reprimand, threats to withdraw supervision and not renew the employee's contract were sufficient to constitute adverse employment actions even though the actions did not actually have an adverse impact on the terms

and conditions of the employee's employment. . . .

*Trujillo*, 1999 WL 194151, at *3. The Eighth Circuit has addressed a situation where an employee's personnel file was "papered" with negative reports. See *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir.1997). The "papering" occurred in conjunction with a reduction in duties, lower performance evaluations, and mandated remedial training. See *id.* Without deciding whether the "papering" in and of itself constituted an adverse employment action, the Eighth Circuit stated, "These are the kind of serious employment consequences that adversely affected or undermined [the plaintiff's] position, even if he was not discharged, demoted or suspended." *Id.* The Tenth Circuit has cited the Eighth Circuit opinion with approval. See, e.g., *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir.1998).

While the Tenth Circuit approach is liberal, it is not so liberal as to include " 'mere inconvenience[s] or . . . alteration[s] of job responsibilities' " as adverse actions. *Sanchez*, 164 F.3d at 532 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)). " '[T]here are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions . . . of Title VII.' " *Fortner v. Kansas*, 934 F.Supp. 1252, 1268 (D.Kan. 1996) (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981)).

The notes maintained by Plaintiff's supervisors and leadman had "no immediate effect upon [Plaintiff's] employment conditions." See *id.* (quoting *Page*, 645 F.2d at 233). Plaintiff was never disciplined in conjunction with any of the write ups. He was not even approached or counseled about most of them. Furthermore, the write ups did not "paper" Plaintiff's per-

sonnel file. The record indicates that the write ups were kept in the supervisor's and leadman's desks. Plaintiff's personnel file was void of any of the write ups but three.[8] The court concludes that no reasonable jury could find that the write ups constituted adverse employment actions. Absent an adverse employment action, Plaintiff cannot establish a prima facie case with respect to the write ups.

■ Next, Plaintiff directs the court to consider his warnings and suspensions. Plaintiff received one warning and suspension in early January, before he filed his EEOC complaint. Before this discipline, Plaintiff had complained several times of discrimination, most recently in November and January. Each time, Plaintiff generally stated that he was being discriminated against, without more explanation. Defendant argues that these complaints of discrimination did not constitute "protected opposition to discrimination," which is required for Plaintiff's prima facie case. See *Kendrick*, 220 F.3d at 1234. The court must determine whether Plaintiff's general complaints fall within the scope of protected opposition.

Judge Vratil of this District has addressed the scope of protected activity under the ADEA, which would also apply to Plaintiff's claims:

> While some courts have indicated that vague references to unspecified discrimination are not protected, no clear rule has emerged as to the level of specificity required, and the standard employed by most courts is not exacting.
>
> Employees often do not speak with the clarity or precision of lawyers. At the same time, however, employers need not approach every employee's comment as a riddle, puzzling over the possibility that it contains a cloaked complaint of discrimination. But the thrust of inartful, subtle, or circumspect remarks nevertheless may be perfectly clear to the employer, and the Court discerns no evidence that Congress intended to protect only the impudent or inarticulate. The relevant question, then, is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.

*Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 560–61 (D.Kan.1995) (internal citations omitted). More recently, the Tenth Circuit considered a case in which an employee made a comment to management that she "hoped this was not an example of disparate treatment." *Lundien*, 2000 WL 1786579, at *9. The Tenth Circuit concluded that "[h]er statement was simply a conclusory remark, without sufficient detail for [the defendant] to know what to investigate." *Id.* Accord, *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313–14 (6th Cir.1989)

---

8. The June 2000 write ups were placed in Plaintiff's personnel file. While they may have constituted adverse employment actions, the court need not reach that question, because Plaintiff has not established causation between Plaintiff's complaints of discrimination and the June write ups. The June write ups occurred more than five months after Plaintiff made any complaints. Retaliatory intent cannot be inferred from two events occurring more than five months apart, absent additional evidence. See *Richmond v.*

*ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

Plaintiff also appears to argue that his placement on attendance review in June of 2000 was in retaliation for his complaining of discrimination. The same causation analysis applied above also applies to Plaintiff's June attendance review. While the attendance review may constitute an adverse action, Plaintiff has failed to establish causation between his complaints and the review.

(affirming the district court's determination that an allegation of "ethnocism" was too vague to constitute protected opposition under the Elliott Larsen Act[9]); *Blount v. Glickman*, No. 96–C–6295, 1998 WL 325235, at *6 (N.D.Ill. June 10, 1998) (holding that a plaintiff's letter requesting leave for four reasons, including "discrimination," did not put her employer on notice that she was complaining of discrimination in violation of Title VII or the ADA).

Plaintiff's general complaints of discrimination are no more detailed than the plaintiff's comment in *Lundien v. United Airlines*. Dan Schloss asked Plaintiff for specifics about Plaintiff's vague allegation of discrimination, but Plaintiff gave no specifics. William Sublette asked Plaintiff to write down his particularized complaint, but Plaintiff did not. Furthermore, the record contains evidence that Plaintiff used the term "discrimination" often. Dan Schloss stated in his deposition, "I think [Plaintiff] was being serious [when he alleged discrimination] but the caveat, the 'but' is that he uses the word discrimination as an adjective. He has said it more than once to various people, including me, and I don't know that he understands what he's saying when he says that. I don't know if he understands the definition of the word." Robert Ferris testified that he thought Plaintiff was using the word "discrimination" as a "crutch"—Plaintiff just thought Defendant was being unfair to him. Finally, William Sublette speculated in his deposition that when Plaintiff complained of discrimination, Plaintiff meant that "[s]omething wasn't going his way." William Sublette also thought that Plaintiff did not know what discrimination was. The court concludes that no reasonable jury could find that Plaintiff's complaints "sufficiently convey[ed] [Plaintiff's] reasonable concerns that the employer has acted or is acting an unlawful discriminatory manner." *Garcia–Paz*, 873 F.Supp. at 561. Consequently, Plaintiff has not shown that he engaged in "protected opposition to discrimination," and therefore has not established a prima facie case with respect to his warning and suspension in early January of 2000.

Even if the court were to assume that Plaintiff engaged in "protected opposition," and that Plaintiff could establish a prima facie case with respect to the warnings and suspensions received both before and after Plaintiff filed his EEOC complaint, Defendant is still entitled to summary judgment on Plaintiff's claims of retaliation. Defendant has given legitimate reasons for Plaintiff's discipline, and Plaintiff has failed to establish that Defendant's reasons are pretextual.

Plaintiff argues that when he was suspended in early January, his discipline was discriminatory because Lee Cossins was not also suspended. He denies that he engaged in the conduct for which he was suspended in February. In addition, he claims that he had a legitimate explanation for his absence from work on March 1.

First, the record establishes that Lee Cossins did not argue with his supervisors like Plaintiff did. Rather, Lee Cossins merely signed his Employee Warning Report and returned to work. Plaintiff was not suspended for refusing to sweep the floor. He was suspended for his conduct after he was confronted about his refusal to sweep the floor. Therefore, Plaintiff and Lee Cossins were not engaged in simi-

---

9. The Elliott Larsen Act is Michigan state law which prohibits retaliatory conduct. See Mich. Comp. Laws Ann. § 37.2701. Courts use the *McDonnell Douglas* test when applying the Michigan law, and consult Title VII decisions when resolving questions under the state statute. See *Becker v. Fed. Express Corp.*, No. 96–1196, 1997 WL 80937, at *2 (6th Cir.1997).

lar conduct. With the exception of his evidence regarding Lee Cossins, Plaintiff has failed to present any evidence that other employees who engaged in similar conduct were not disciplined. See *Unrein v. Payless Shoesource, Inc.*, 51 F.Supp.2d 1195, 1211 (D.Kan.1999). Absent such evidence, Plaintiff fails to establish pretext.

■ Plaintiff's arguments that he did not participate in the conduct for which he was suspended and that he had a valid excuse for his conduct also fail. While Plaintiff very well may not have been at fault in the incidents, his innocence or fault is not for the court to decide. The record establishes that Defendant believed Plaintiff to be at fault. The court is "not required to resolve whether or not [Defendant's] belief was correct." *Ryan v. Cohen*, No. 98–6183, 1999 WL 38173, at *3 (10th Cir. Jan.29, 1999). "The relevant inquiry is not whether [Defendant's] proffered reasons [for disciplining Plaintiff] were wise, fair or correct, but whether [Defendant] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999) (citations omitted). Plaintiff offers no evidence which would suggest that Defendant did not honestly believe that Plaintiff participated in the alleged conduct or that Defendant did not act in good faith on that belief. Absent such evidence, the court cannot conclude that Defendant's reasons for Plaintiff's discipline were pretextual.

In sum, Plaintiff has failed to establish that there is a genuine issue of material fact as to whether he was denied promotions based on his race and age in violation of Title VII, § 1981, and the ADEA. He also has failed to establish that there is a genuine issue of material fact as to whether, in violation of Title VII and § 1981, he was disciplined in retaliation for making complaints of discrimination.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's summary judgment motion (Doc. 36) is granted.

The case is closed.

**IT IS SO ORDERED.**